(Slip Opinion) OCTOBER TERM, 2014 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## INTEGRITY STAFFING SOLUTIONS, INC. *v.* BUSK ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 13–433.　Argued October 8, 2014—Decided December 9, 2014

Petitioner Integrity Staffing Solutions, Inc., required its hourly warehouse workers, who retrieved products from warehouse shelves and packaged them for delivery to Amazon.com customers, to undergo a security screening before leaving the warehouse each day. Respondents, former employees, sued the company alleging, as relevant here, that they were entitled to compensation under the Fair Labor Standards Act of 1938 (FLSA) for the roughly 25 minutes each day that they spent waiting to undergo and undergoing those screenings. They also alleged that the company could have reduced that time to a *de minimis* amount by adding screeners or staggering shift terminations and that the screenings were conducted to prevent employee theft and, thus, for the sole benefit of the employers and their customers.

　The District Court dismissed the complaint for failure to state a claim, holding that the screenings were not integral and indispensable to the employees' principal activities but were instead postliminary and noncompensable. The U. S. Court of Appeals for the Ninth Circuit reversed in relevant part, asserting that postshift activities that would ordinarily be classified as noncompensable postliminary activities are compensable as integral and indispensable to an employee's principal activities if the postshift activities are necessary to the principal work and performed for the employer's benefit.

*Held*: The time that respondents spent waiting to undergo and undergoing security screenings is not compensable under the FLSA. Pp. 3–9.

　(a) Congress passed the Portal-to-Portal Act to respond to an economic emergency created by the broad judicial interpretation given to the FLSA's undefined terms "work" and "workweek." See 29 U. S. C.

Syllabus

§251(a); *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U. S. 590, 598. The Portal-to-Portal Act exempted employers from FLSA liability for claims based on "activities which are preliminary to or postliminary to" the performance of the principal activities that an employee is employed to perform. §254(a)(2). Under this Court's precedents, the term "principal activities" includes all activities which are an "integral and indispensable part of the principal activities." *Steiner* v. *Mitchell*, 350 U. S. 247, 252–253. An activity is "integral and indispensable" if it is an intrinsic element of the employee's principal activities and one with which the employee cannot dispense if he is to perform his principal activities. This Court has identified several activities that satisfy this test—see, *e.g., id.,* at 249, 251; *Mitchell* v. *King Packing Co.*, 350 U. S. 260, 262—and Department of Labor regulations are consistent with this approach, see 29 CFR §§790.8(c), 790.7(g). Pp. 3–7.

   (b) The security screenings at issue are noncompensable postliminary activities. To begin with, the screenings were not the principal activities the employees were employed to perform—*i.e.,* the workers were employed not to undergo security screenings but to retrieve products from warehouse shelves and package them for shipment. Nor were they "integral and indispensable" to those activities. This view is consistent with a 1951 Department of Labor opinion letter, which found noncompensable under the Portal-to-Portal Act both a preshift screening conducted for employee safety and a postshift search conducted to prevent employee theft. The Ninth Circuit's test, which focused on whether the particular activity was required by the employer rather than whether it was tied to the productive work that the employee was employed to perform, would sweep into "principal activities" the very activities that the Portal-to-Portal Act was designed to exclude from compensation. See, *e.g., IBP, supra,* at 41. Finally, respondents' claim that the screenings are compensable because Integrity Staffing could have reduced the time to a *de minimis* amount is properly presented at the bargaining table, not to a court in an FLSA claim. Pp. 7–9.

713 F. 3d 525, reversed.

   THOMAS, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which KAGAN, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–433

INTEGRITY STAFFING SOLUTIONS, INC., PETITIONER *v.* JESSE BUSK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[December 9, 2014]

JUSTICE THOMAS delivered the opinion of the Court.

The employer in this case required its employees, warehouse workers who retrieved inventory and packaged it for shipment, to undergo an antitheft security screening before leaving the warehouse each day. The question presented is whether the employees' time spent waiting to undergo and undergoing those security screenings is compensable under the Fair Labor Standards Act of 1938 (FLSA), 29 U. S. C. §201 *et seq.*, as amended by the Portal-to-Portal Act of 1947, §251 *et seq.* We hold that the time is not compensable. We therefore reverse the judgment of the United States Court of Appeals for the Ninth Circuit.

I

Petitioner Integrity Staffing Solutions, Inc., provides warehouse staffing to Amazon.com throughout the United States. Respondents Jesse Busk and Laurie Castro worked as hourly employees of Integrity Staffing at warehouses in Las Vegas and Fenley, Nevada, respectively. As warehouse employees, they retrieved products from the shelves and packaged those products for delivery to Amazon customers.

Integrity Staffing required its employees to undergo a security screening before leaving the warehouse at the end of each day. During this screening, employees removed items such as wallets, keys, and belts from their persons and passed through metal detectors.

In 2010, Busk and Castro filed a putative class action against Integrity Staffing on behalf of similarly situated employees in the Nevada warehouses for alleged violations of the FLSA and Nevada labor laws. As relevant here, the employees alleged that they were entitled to compensation under the FLSA for the time spent waiting to undergo and actually undergoing the security screenings. They alleged that such time amounted to roughly 25 minutes each day and that it could have been reduced to a *de minimis* amount by adding more security screeners or by staggering the termination of shifts so that employees could flow through the checkpoint more quickly. They also alleged that the screenings were conducted "to prevent employee theft" and thus occurred "solely for the benefit of the employers and their customers." App. 19, 21.

The District Court dismissed the complaint for failure to state a claim, holding that the time spent waiting for and undergoing the security screenings was not compensable under the FLSA. It explained that, because the screenings occurred after the regular work shift, the employees could state a claim for compensation only if the screenings were an integral and indispensable part of the principal activities they were employed to perform. The District Court held that these screenings were not integral and indispensable but instead fell into a noncompensable category of postliminary activities.

The United States Court of Appeals for the Ninth Circuit reversed in relevant part. 713 F. 3d 525 (2013). The Court of Appeals asserted that postshift activities that would ordinarily be classified as noncompensable postliminary activities are nevertheless compensable as integral

and indispensable to an employee's principal activities if those postshift activities are necessary to the principal work performed and done for the benefit of the employer. *Id.*, at 530. Accepting as true the allegation that Integrity Staffing required the security screenings to prevent employee theft, the Court of Appeals concluded that the screenings were "necessary" to the employees' primary work as warehouse employees and done for Integrity Staffing's benefit. *Id.*, at 531.

We granted certiorari, 571 U. S. ___ (2014), and now reverse.

## II

### A

Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek. §§6(a)(1), 7(a)(3), 52 Stat. 1062–1063. An employer who violated these provisions could be held civilly liable for backpay, liquidated damages, and attorney's fees. §16, *id.*, at 1069.

But the FLSA did not define "work" or "workweek," and this Court interpreted those terms broadly. It defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123*, 321 U. S. 590, 598 (1944). Similarly, it defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U. S. 680, 690–691 (1946). Applying these expansive definitions, the Court found compensable the time spent traveling between mine portals and underground work areas, *Tennessee Coal, supra*, at 598, and the time spent walking from timeclocks to work benches, *Anderson, su-*

*pra*, at 691–692.

These decisions provoked a flood of litigation. In the six months following this Court's decision in *Anderson*, unions and employees filed more than 1,500 lawsuits under the FLSA. S. Rep. No. 37, 80th Cong., 1st Sess., pp. 2–3 (1947). These suits sought nearly $6 billion in back pay and liquidated damages for various preshift and postshift activities. *Ibid.*

Congress responded swiftly. It found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers." 29 U. S. C. §251(a). Declaring the situation to be an "emergency," Congress found that, if such interpretations "were permitted to stand, . . . the payment of such liabilities would bring about financial ruin of many employers" and "employees would receive windfall payments . . . for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay." §§251(a)–(b).

Congress met this emergency with the Portal-to-Portal Act. The Portal-to-Portal Act exempted employers from liability for future claims based on two categories of work-related activities as follows:

> "(a) Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer . . . to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act—
> "(1) walking, riding, or traveling to and from the ac-

tual place of performance of the principal activity or ac-
tivities which such employee is employed to perform,
and

"(2) activities which are preliminary to or postlimi-
nary to said principal activity or activities,

"which occur either prior to the time on any particular
workday at which such employee commences, or sub-
sequent to the time on any particular workday at
which he ceases, such principal activity or activities."
§4, 61 Stat. 86–87 (codified at 29 U. S. C. §254(a)).

At issue here is the exemption for "activities which are
preliminary to or postliminary to said principal activity or
activities."

## B

This Court has consistently interpreted "the term 'prin-
cipal activity or activities' [to] embrac[e] all activities
which are an 'integral and indispensable part of the prin-
cipal activities.'" *IBP, Inc.* v. *Alvarez,* 546 U. S. 21, 29–30
(2005) (quoting *Steiner* v. *Mitchell,* 350 U. S. 247, 252–253
(1956)). Our prior opinions used those words in their
ordinary sense. The word "integral" means "[b]elonging to
or making up an integral whole; constituent, component;
*spec*[*ifically*] necessary to the completeness or integrity of
the whole; forming an intrinsic portion or element, as
distinguished from an adjunct or appendage." 5 Oxford
English Dictionary 366 (1933) (OED); accord, Brief for
United States as *Amicus Curiae* 20 (Brief for United
States); see also Webster's New International Dictionary
1290 (2d ed. 1954) (Webster's Second) ("[e]ssential to
completeness; constituent, as a part"). And, when used to
describe a duty, "indispensable" means a duty "[t]hat
cannot be dispensed with, remitted, set aside, disregarded,
or neglected." 5 OED 219; accord, Brief for United States
19; see also Webster's Second 1267 ("[n]ot capable of being
dispensed with, set aside, neglected, or pronounced nonob-

ligatory"). An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities. As we describe below, this definition, as applied in these circumstances, is consistent with the Department of Labor's regulations.

Our precedents have identified several activities that satisfy this test. For example, we have held compensable the time battery-plant employees spent showering and changing clothes because the chemicals in the plant were "toxic to human beings" and the employer conceded that "the clothes-changing and showering activities of the employees [were] indispensable to the performance of their productive work and integrally related thereto." *Steiner*, *supra*, at 249, 251. And we have held compensable the time meatpacker employees spent sharpening their knives because dull knives would "slow down production" on the assembly line, "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents." *Mitchell* v. *King Packing Co.*, 350 U. S. 260, 262 (1956). By contrast, we have held noncompensable the time poultry-plant employees spent waiting to don protective gear because such waiting was "two steps removed from the productive activity on the assembly line." *IBP*, *supra*, at 42.

The Department of Labor's regulations are consistent with this approach. See 29 CFR §790.8(b) (2013) ("The term 'principal activities' includes all activities which are an integral part of a principal activity"); §790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance"). As an illustration, those regulations explain that the time spent by an employee in a chemical plant changing clothes would be

compensable if he "c[ould not] perform his principal activities without putting on certain clothes" but would not be compensable if "changing clothes [were] merely a convenience to the employee and not directly related to his principal activities." See §790.8(c). As the regulations explain, "when performed under the conditions normally present," activities including "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks" are "'preliminary'" or "'postliminary'" activities. §790.7(g).

## III

### A

The security screenings at issue here are noncompensable postliminary activities. To begin with, the screenings were not the "principal activity or activities which [the] employee is employed to perform." 29 U. S. C. §254(a)(1). Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers.

The security screenings also were not "integral and indispensable" to the employees' duties as warehouse workers. As explained above, an activity is not integral and indispensable to an employee's principal activities unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities. The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment. And Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.

The Solicitor General, adopting the position of the Department of Labor, agrees that these screenings were noncompensable postliminary activities. See Brief for United States 10. That view is fully consistent with an

Opinion Letter the Department issued in 1951. The letter found noncompensable a preshift security search of employees in a rocket-powder plant "'for matches, spark producing devices such as cigarette lighters, and other items which have a direct bearing on the safety of the employees,'" as well as a postshift security search of the employees done "'for the purpose of preventing theft.'" Opinion Letter from Dept. of Labor, Wage and Hour Div., to Dept. of Army, Office of Chief of Ordnance (Apr. 18, 1951), pp. 1–2 (available in Clerk of Court's case file). The Department drew no distinction between the searches conducted for the safety of the employees and those conducted for the purpose of preventing theft—neither were compensable under the Portal-to-Portal Act.

## B

The Court of Appeals erred by focusing on whether an employer *required* a particular activity. The integral and indispensable test is tied to the productive work that the employee is *employed to perform*. See, *e.g., IBP,* 546 U. S., at 42; *Mitchell, supra,* at 262; *Steiner,* 350 U. S., at 249–251; see also 29 CFR §790.8(a) (explaining that the term "principal activities" was "considered sufficiently broad to embrace within its terms such activities as are indispensable to *the performance of productive work*" (internal quotation marks omitted; emphasis added)); §790.8(c) ("Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable *to its performance*" (emphasis added)).

If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into "principal activities" the very activities that the Portal-to-Portal Act was designed to address. The employer in *Anderson*, for instance, required its employees to walk "from a timeclock near the factory gate to a workstation" so that they could "begin their work," "but it is indisputable that

the Portal-to-Portal Act evinces Congress' intent to repu-
diate *Anderson*'s holding that such walking time was
compensable under the FLSA." *IBP, supra*, at 41. A test
that turns on whether the activity is for the benefit of the
employer is similarly overbroad.

Finally, we reject the employees' argument that time
spent waiting to undergo the security screenings is com-
pensable under the FLSA because Integrity Staffing could
have reduced that time to a *de minimis* amount. The fact
that an employer could conceivably reduce the time spent
by employees on any preliminary or postliminary activity
does not change the nature of the activity or its relation-
ship to the principal activities that an employee is em-
ployed to perform. These arguments are properly present-
ed to the employer at the bargaining table, see 29 U. S. C.
§254(b)(1), not to a court in an FLSA claim.

\*    \*    \*

We hold that an activity is integral and indispensable to
the principal activities that an employee is employed to
perform—and thus compensable under the FLSA—if it is
an intrinsic element of those activities and one with which
the employee cannot dispense if he is to perform his prin-
cipal activities. Because the employees' time spent wait-
ing to undergo and undergoing Integrity Staffing's security
screenings does not meet these criteria, we reverse the
judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 13–433

––––––––––

## INTEGRITY STAFFING SOLUTIONS, INC., PETITIONER *v.* JESSE BUSK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[December 9, 2014]

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins, concurring.

I concur in the Court's opinion, and write separately only to explain my understanding of the standards the Court applies.

The Court reaches two critical conclusions. First, the Court confirms that compensable "'principal'" activities "'includ[e] . . . those closely related activities which are indispensable to [a principal activity's] performance,'" *ante*, at 6 (quoting 29 CFR §790.8(c)(2013)), and holds that the required security screenings here were not "integral and indispensable" to another principal activity the employees were employed to perform, *ante,* at 7. I agree. As both Department of Labor regulations and our precedent make clear, an activity is "indispensable" to another, principal activity only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively. Thus, although a battery plant worker might, for example, perform his principal activities without donning proper protective gear, he could not do so safely, see *Steiner* v. *Mitchell*, 350 U. S. 247, 250–253 (1956); likewise, a butcher might be able to cut meat without having sharpened his knives, but he could not do so effectively, see *Mitchell* v. *King Packing Co.*, 350 U. S. 260, 262–263 (1956); accord, 29 CFR

§790.8(c). Here, by contrast, the security screenings were not "integral and indispensable" to the employees' other principal activities in this sense. The screenings may, as the Ninth Circuit observed below, have been in some way related to the work that the employees performed in the warehouse, see 713 F. 3d 525, 531 (2013), but the employees could skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired, see *ante*, at 7.

Second, the Court holds also that the screenings were not themselves "'principal . . . activities'" the employees were "'employed to perform.'" *Ibid.* (quoting 29 U. S. C. §254(a)(1)). On this point, I understand the Court's analysis to turn on its conclusion that undergoing security screenings was not itself work of consequence that the employees performed for their employer. See *ante*, at 7. Again, I agree. As the statute's use of the words "preliminary" and "postliminary" suggests, §254(a)(2), and as our precedents make clear, the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday. See *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34–37 (2005). It distinguishes between activities that are essentially part of the ingress and egress process, on the one hand, and activities that constitute the actual "work of consequence performed for an employer," on the other hand. 29 CFR §790.8(a); see also *ibid.* (clarifying that a principal activity need not predominate over other activities, and that an employee could be employed to perform multiple principal activities). The security screenings at issue here fall on the "preliminary . . . or postliminary" side of this line. 29 U. S. C. §254(a)(2). The searches were part of the process by which the employees egressed their place of work, akin to checking in and out and waiting in line to do so—activities that Congress clearly deemed to be preliminary or postliminary. See S. Rep. No. 48, 80th Cong., 1st Sess., 47 (1947); 29 CFR §790.7(g). Indeed, as

the Court observes, the Department of Labor reached the very same conclusion regarding similar security screenings shortly after the Portal-to-Portal Act was adopted, see *ante*, at 7–8, and we owe deference to that determination, see *Christensen* v. *Harris County*, 529 U. S. 576, 587 (2000).

Because I understand the Court's opinion to be consistent with the foregoing, I join it.